# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINE BAK LLC,<br>   Plaintiff,<br><br>     v.<br><br>SELKATZ, INC. d/b/a THIS OLD GAL, et al.,<br>   Defendants. | CV 20-5065 DSF (SK)<br><br>Order DENYING in Part and GRANTING in Part Defendant Selkatz, Inc's Motion to Dismiss and Strike (Dkt. 18) |

  Defendant Selkatz, Inc. contends the Court lacks subject matter jurisdiction over Plaintiff Tine Bak LLC's Complaint and that Plaintiff's claim for tortious interference with business relationships (Count II) is preempted. Dkt. 18 (Mot.). Defendant also moves to strike Count II under California's Strategic Lawsuit Against Public Participation (anti-SLAPP) statute. Id. Plaintiff opposes. Dkt. 34 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the Motion to Dismiss is DENIED in part and GRANTED in part.

## I. Background

### A.  Plaintiff's Recipe Program

  Plaintiff runs a recipe program called Copy Me That (CMT) that allows users to store recipes electronically. Dkt. 1 (Compl.) ¶ 9. Users can either type in recipes themselves or clip recipes they have found on the internet. Id. CMT's features include "the ability to organize recipes with tags and to search, filter, print, email and, in the premium

version, scale them." Id. CMT also includes shopping list features, meal planner features, and the ability to create personal cookbooks. Id. CMT can be accessed on the internet or as an application (app) that runs on IOS and Android devices. Id.

The decision to clip and store a recipe in CMT is made by each user. Id. ¶ 10. When a user decides to store a recipe, the user "instructs the program to store information such as the title, ingredients, instructions, number of servings (known as the yield) and preparation (collectively, "Recipe Text"), a user description, user notes, up to one photograph and a hyperlink to the Internet page where the recipe was posted." Id. ¶ 11. CMT does not store any of the original internet page's narrative or videos accompanying the recipe. Id. ¶ 12.

Plaintiff has "established a designated agent for service of copyright claims on its website and in an online filing with the United States Copyright Office, has established and implemented a policy for terminating repeat infringers, and complies with [Digital Millennium Copyright Act (DMCA)] takedown requests." Id. ¶ 17. On receipt of a DMCA takedown notice, Plaintiff disables access to a recipe "by removing it from the CMT Community" and will, on request, "remove and prevent CMT users from sharing in the CMT Community any Recipes clipped from a particular site without requiring a DMCA notice for each Recipe." Id. ¶ 18.

## B. Defendant's Demand

Defendant owns and operates an internet recipe website called This Old Gal. Id. ¶ 19. Defendant contacted Plaintiff in April 2016 "and requested that CMT include just a photograph and link to her Recipe Page." Id. ¶ 25. On April 7, 2016, following an email exchange between the parties, Plaintiff removed Defendant's recipes from CMT and prevented users from sharing Defendant's recipes with the CMT Community. Id. ¶ 26. Defendant further demanded Plaintiff prevent users from clipping Defendant's recipes to their private storage areas. Id.

### C.   Complaints With Apple

On July 12, 2019, Defendant filed a complaint with Apple, stating CMT infringes on its copyright. Id. ¶ 27. In the complaint, assigned complaint number APP115278, Defendant stated CMT users are able to upload its copyrighted content onto CMT, users can use its copyrighted content in printed cookbooks, and Plaintiff pays administrators of Facebook groups to promote CMT and to share recipes using links to CMT instead of to bloggers' websites. Id. Plaintiff requested Apple close the complaint because Defendant identified the complainant as Tine Bak, Plaintiff's founder, instead of Jill Selkowitz, Defendant's founder. Id. ¶ 28. Apple did not close the complaint and notified Plaintiff it could not "serve as arbiter for disputes among third parties" and to "contact Jill Selkowitz directly regarding your actions." Id.

The parties then sent several emails back and forth, copying Apple, regarding whether Plaintiff violated Defendant's copyright and Plaintiff's DMCA takedown policy. Id. ¶ 30. On August 26, 2019, Defendant wrote to Apple, 'This matter is not closed and won't be until the app is removed from the apple store and cmt is removed from having any life." Id. On September 9, 2019, Apple informed Plaintiff the app had been removed from the App Store due to another complaint, which Plaintiff then resolved. Id. ¶ 32. After the resolution of that complaint, Plaintiff requested CMT be reinstated to the App Store. Id. Apple replied it would not reinstate the app until Plaintiff could "demonstrate that all matters involving your app have been resolved." Id.

## II. Discussion

### A.   Subject Matter Jurisdiction

Defendant argues the court does not have subject matter jurisdiction because there is no "case or controversy" between the parties as required by the Declaratory Judgment Act, 28 U.S.C. § 2201. Mot. at 3. Specifically, Defendant asserts (1) Defendant's complaint to Apple does not demonstrate a controversy between Defendant and Plaintiff, and (2) Plaintiff's Complaint does not allege other facts that

3

might give rise to a case or controversy because there is no reasonable apprehension of litigation and Plaintiff has failed to sufficiently identify copyrighted material germane to a controversy between the parties. Id. at 5-11.

**1. Legal Standard**

    a. Subject Matter Jurisdiction

The plaintiff bears the burden of establishing subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). On a motion under Rule 12(b)(1), the Court accepts as true all factual allegations and construes the pleadings in the light most favorable to the plaintiff. Oklevueha Native Am. Church of Haw., Inc. v. Holder, 676 F.3d 829, 834 (9th Cir. 2012). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. "In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit 'affidavits or any other evidence properly before the court . . . . It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" Colwell v. Dep't of Health & Hum. Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (alteration in original) (quoting St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989)).

    b. Declaratory Judgment Act

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); see also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126 (2007). "The Constitution limits Article III federal courts' jurisdiction to deciding 'cases' and 'controversies.'" Oklevueha, 676 F.3d at 835 (quoting U.S. Const. art. III, § 2).

The Court therefore has subject matter jurisdiction over Plaintiff's Declaratory Judgment Act claim if the claim meets the case or controversy requirement of Article III. See also Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1157 (9th Cir. 2007) (stating when analyzing a declaratory judgment claim for subject matter jurisdiction, "federal courts must take care to ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion"). An actual case or controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 127.

### 2. Plaintiff Has Established a Case or Controversy

#### a. There Is a Sufficiently Immediate and Real Controversy

There is an actual case or controversy here. Because of Defendant, CMT will not be reinstated to the App Store without a declaration of rights. Compl. ¶ 32. While it was a third-party complaint that catalyzed the removal of CMT from the Store, that complaint has since been resolved. Id. Still, Apple informed Plaintiff it would not reinstate CMT until Plaintiff could "demonstrate that all matters involving your app have been resolved," including Defendant's complaint. Id. This is therefore a "substantial controversy . . . of sufficient immediacy and reality" in which the parties have adverse legal interests that warrant the issuance of a declaratory judgment. MedImmune, 549 U.S. at 127.

There is also "some useful purpose to be achieved in deciding [the legal issues here]." Public Service Commission v. Wycoff Co., 344 U.S. 237, 244 (1952). Defendant warns that finding jurisdiction here will transform notifications under the DMCA from "an informal means of resolution into a burden on the federal courts," Mot. at 5, but the Court disagrees. Plaintiff and Defendant spent months exchanging messages and Plaintiff tried to negotiate with Apple independently of Defendant.

5

See Compl. ¶¶ 28-32. Plaintiff and Defendant, therefore, clearly attempted to resolve their differences through the informal notice scheme under the DMCA, but still cannot agree. Plaintiff could not convince either Defendant or Apple it was not infringing Defendant's copyrights and is therefore understandably seeking a declaration of rights.

Apple has an interest in complying with the DMCA to shield itself from liability. Defendant has an interest in notifying third-party providers if it thinks its copyrights are being infringed. Plaintiff, however, also has a valid interest in maintaining its business if it is not infringing another's copyright. Clarifying the parties' rights here will resolve their controversy. That warrants this Court's exercise of discretion to issue a declaration of rights. 28 U.S.C.A. § 2201 (noting a court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought") (emphasis added).

                b.      The Dispute Is Between Plaintiff and Defendant

While Defendant has framed this as a dispute between Plaintiff and Apple, see, e.g., Mot. at 5, Apple stated it could not "serve as arbiter for disputes among third parties" and directed Plaintiff to "contact Jill Selkowitz directly regarding your actions." Compl. ¶ 28. The dispute is between Plaintiff and Defendant as a resolution of Defendant's request is a prerequisite to Apple reinstating Plaintiff's app on the App Store. See Vernor v. Autodesk, Inc., 555 F. Supp. 2d 1164, 1167 (W.D. Wash. 2008) (finding defendant's delays of plaintiff's eBay auctions and the one-month suspension of plaintiff's eBay account resulting from defendant's repeated DMCA notices constituted "a controversy of sufficient immediacy."). Taking Plaintiff's allegations in

the Complaint as true, Plaintiff has stated a sufficiently definite case or controversy.[1]

Defendant does not point to any Ninth Circuit or Supreme Court case that holds a party who has made a DMCA complaint to a third-party platform cannot have a substantial controversy with and adverse legal interests to the party that is the subject of that complaint. Defendant relies instead primarily on Lenz v. Universal Music Corporation, No. C 07-03783 JF, 2008 WL 962102, at *5 (N.D. Cal. Apr. 8, 2008). But as Plaintiff notes, Opp'n at 10, Lenz involved a video that was removed from *and then restored to* YouTube. Lenz, 2008 WL 962102, at *5. That case, in addition to not being binding on this Court, is distinguishable. Because the video had been restored, there was no remaining controversy between the parties. That is not the situation here.

### c. Plaintiff's Complaint Is Sufficiently Specific

This case is also distinguishable from the district court cases that found a plaintiff's allegations relating to copyright infringement were not sufficiently specific. See, e.g. Veoh Networks, Inc. v. UMG Recordings, Inc., 522 F. Supp. 2d 1265, 1269 (S.D. Cal. 2007) ("because Plaintiff does not reference any specific copyright, even by way of example, the relief requested would necessarily take the form of an advisory opinion"). Here, Plaintiff's Complaint provides the identification number for the complaint filed by Defendant with Apple. Because Defendant should know which of its own copyrights it based its own complaint on, this is sufficient information to put Defendant on notice of which copyrights are at issue. Because Plaintiff adequately established a case or controversy under the Declaratory Judgment Act, Defendant's Motion to Dismiss the First Claim for Relief is DENIED.

---

[1] The Court finds there is an adequate case or controversy apart from whether there was a threat of litigation, so it does not reach Defendant's argument on that point.

### B.  Preemption

#### 1.  Legal Standard

Preemption occurs "when compliance with both state and federal [laws] is a physical impossibility or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hillsborough County, Florida v. Automated Med. Labs. Inc., 471 U.S. 707, 713 (1985) (internal citations and punctuation omitted); see also In re Cybernetics Servs., Inc., 252 F.3d 1039, 1045 (9th Cir. 2001). The DMCA provides a comprehensive notice and takedown scheme that itself regulates the submission of false infringement notices. 17 U.S.C. § 512(f) (creating liability for "knowingly materially misrepresent[ing]" infringement); see also Lenz, 2008 WL 962102, at *4 (section 512(f) provides the "sole remedy" for those who object to a notice's contents and effects). Therefore, if Plaintiff's tortious interference claim is predicated solely on Defendant submitting a false infringement notice, it is preempted.

#### 2.  Defendant's Complaint Is a Notice Under the DMCA

Plaintiff contends its claim for tortious interference is not based on a DMCA takedown notice because (1) the Complaint did not identify Defendant's complaint to Apple as a DMCA complaint, (2) Defendant's complaint does not comply with the requirements for a DMCA takedown notice, and (3) Apple's response was inconsistent with a DMCA takedown notice. Opp'n at 2-5, 12-15.

The Court finds Defendant's complaint was a notice of false infringement under the DMCA. The only facts in the Complaint regarding Defendant's complaint to Apple are (1) Defendant made a complaint relating to infringement of its copyright, and (2) Plaintiff asserts it does not infringe on Defendant's copyrights. See Compl. ¶ 27 ("Defendant filed a complaint with Apple stating that CMT infringes on her copyright"), 30 (Defendant stated Plaintiff "allowed [customers] to steal my recipes and photos"), 31 ("Apple wrote and asked for the status of the communications. [Plaintiff] replied on September 9, 2019, that she had reached out to the Defendant and explained to her that CMT

8

does not infringe on her copyrights"); see also Opp'n at 7 ("Apple considered Defendant's complaint to be based on copyright infringement"). Plaintiff is therefore alleging Defendant submitted a false infringement notice, and false infringement notices fall within the notice scheme of the DMCA.

Plaintiff's other arguments as to why Defendant's complaint was not a DMCA notice are not convincing. Plaintiff notes Defendant's complaint failed to identify any copyrighted work or material claimed to be infringing under section 512(c)(3)(A). Opp'n at 3-4. But section 512(c)(3)(A) notes that a complaint must include "substantially the following" elements. 17 U.S.C. § 512(c)(3)(A). Therefore, the failure to include certain elements does not necessarily defeat application of the DMCA.

Plaintiff also argues Apple did not treat Defendant's complaint as a takedown notice because it did not indicate whether Apple had taken steps to "expeditiously" remove or disable access to the infringing material and did not explain Plaintiff could submit a counter-notification as required by section 512(c) and (g).[2] Opp'n at 4. But section 512(c)(1)(C) does not require Apple to notify the parties that it is responding expeditiously to remove the content; it merely requires Apple to respond expeditiously. 17 U.S.C. § 512(c)(1)(C). Plaintiff's Complaint asserts Apple removed Plaintiff's app on September 9, 2019. Comp. ¶ 32. This was 59 days after Defendant initially filed a complaint, and only 1 day after Apple requested the status of communications after some back and forth between Plaintiff and Defendant regarding the complaint. See id. ¶¶ 27-31. Apple responded quickly after the parties ceased communicating.

---

[2] The Court considers the email from Apple regarding Defendant's complaint because the document was incorporated by reference into Plaintiff's Complaint and Defendant does not dispute its authenticity. See United States v. Corinthian Colls., 655 F.3d 984, n.4 (9th Cir. 2011); Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

9

Further, while Apple's response did not explicitly advise that Plaintiff could submit a counter-notification, it noted: "You can reach Complainant through Jill Selkowitz (email: jill@thisoldgal.com), copied on this email. Please exchange correspondence directly with Complainant. We look forward to receiving written assurance that your application does not infringe Complainant's rights, or that the parties are taking steps to promptly resolve the matter. Please keep us apprised of your progress." Dkt. 34-1 at 1. This opened up a channel of communication to submit a counter-notification. In any event, the statute does not require that Apple transmit the requirements of a counter-notification; it states only: "To be effective under this subsection, a counter notification must . . . include[] the following." 17 U.S.C. § 512(g)(3).

Further, contrary to Plaintiff's argument, Opp'n at 2-5, lack of compliance with requirements in the statute does not mean the complaint does not fall under the DMCA. It means that Apple or Plaintiff may not be entitled to safe harbor from infringement if it could not meet those elements. Neither party points to any legal authority establishing that a takedown notice under the DMCA must be titled as such or that DMCA notices may escape preemption if a party flubs some of the requirements under the statute. The substance of Defendant's complaint, as described in the Complaint, addresses the removal of an app because of an allegation of copyright infringement that a party says is false. Taking all of the facts in the Complaint as true, that falls squarely under the DMCA.

### 3. Plaintiff's Claim is Preempted

The Court agrees with Defendant that Plaintiff's tortious interference claim is preempted by federal law. "Numerous courts within the 9th Circuit have held that 17 U.S.C. § 512(f) preempts state law claims based on DMCA takedown notifications." Complex Media, Inc. v. X17, Inc., No. CV1807588SJOAGRX, 2019 WL 2896117, at *5-6 (C.D. Cal. Mar. 4, 2019) (collecting cases); see also Amaretto Rancho Breedables, LLC v. Ozimals, Inc., 2011 WL 2690437, at *4 (N.D. Cal. July 8, 2011) ("[A] DMCA Takedown Notification is a creature of a

10

federal statutory regime"; "that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification."). The DMCA preempts state law because of its comprehensive scheme addressing the submission of false infringement notices. See 17 U.S.C. § 512(f); Online Policy Grp. v. Diebold, Inc., 337 F. Supp. 2d 1195, 1205-06 (N.D. Cal. 2004) ("If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law."). As noted above, the only facts in the Complaint supporting a claim for tortious interference are that Defendant filed a false infringement notice. This is irreconcilable with the DMCA's notice scheme, meaning the claim is preempted.

Plaintiff does not give Defendant adequate notice of any basis for its tortious interference claim other than the submission of a false infringement notice. See Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)) ("Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claims rests.'"). The interference claim refers explicitly and exclusively to the submission of the DMCA notices. "Submission of the DMCA notices is not offered as but one example, but rather, the *only* example of interference." Stardock Sys., Inc. v. Reiche, No. C 17-07025 SBA, 2019 WL 8333514, at *5 (N.D. Cal. May 14, 2019) (internal citations and punctuation omitted). Therefore, to the extent Plaintiff purports to rely on any basis not preempted, Plaintiff fails to state a claim and Count II is dismissed under Rule 12(b)(6).[3]

Defendant's Motion to Dismiss Count II is therefore GRANTED.[4] Because it is possible that Plaintiff may assert Defendant's complaint

---

[3] Defendant brought this motion under Federal Rule of Civil Procedure Rule 12(b)(1) and California's anti-SLAPP statute, but "[a] trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6)." Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987).

[4] The Court does not reach Defendant's anti-SLAPP argument because Plaintiff's claim as currently pleaded is preempted. Therefore, each party will bear its own attorneys' fees and costs at this time. Further, the Court does not find that Defendant's Motion was frivolous, Opp'n at 22-23, because

was based on something other than notices of copyright infringement, the Court grants leave to amend.

## III. CONCLUSION

Because there is a case or controversy under the Declaratory Judgment Act, the Court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction. The Court GRANTS Defendant's motion to dismiss Count II because Plaintiff's tortious interference claim is preempted. Leave to amend is granted to the extent Plaintiff can establish a basis for its tortious interference claim that is not preempted. An amended complaint may be filed and served no later than December 31, 2020. Failure to file an amended complaint by that date will waive Plaintiff's right to do so. If Plaintiff fails to file an amended complaint by that date, Defendant must answer the remaining count within twenty days after that date. Leave to amend is granted only to address the specific issues raised by the motion. Leave to add new claims or new defendants is not granted. Plaintiff must seek such leave to amend by a properly noticed motion.

IT IS SO ORDERED.

Date: November 30, 2020

Dale S. Fischer
United States District Judge

---

it was based on the facts alleged in the Complaint and reasonable legal arguments; it therefore also denies a fee award on that basis.